**Rosalind L. EATON and Walter S. Linscott**

v.

**Hadley B. MILLER.**

Supreme Judicial Court of Maine.

Feb. 18, 1969.

David A. Nichols, Camden, for plaintiffs.

James Blenn Perkins, Jr., Boothbay Harbor, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On Appeal.

The will of the late Harold B. Kaler was duly admitted to probate in the Knox County Probate Court and letters testamentary issued to the defendant Miller, the named executor. Soon thereafter the plaintiffs, who are the testator's cousins and heirs-at-law, brought this complaint against the defendant Miller (and another defendant who is no longer a party to this action) as authorized by 14 M.R.S.A. Section 5956 asking for the Court's declaratory judgment that paragraphs 2, 3, and 13 of the will are null and void, that after payment of Mr. Kaler's debts, funeral and burial expenses, expenses of administration and valid bequests, the residue is distributable to the plaintiffs and that the defendant be directed to abstain from carrying out the directions of paragraph 2.

The defendant's answer admitted the allegations of the complaint, agreed that a controversy did exist between the parties as to the construction and validity of the portions of the will questioned by the plaintiffs and asked for judgment.

The plaintiffs then on April 25, 1967, moved for summary judgment alleging that there was no genuine issue as to any material fact and that they were entitled to the relief demanded in their complaint as a matter of law.

The paragraphs of Mr. Kaler's will the validity of which plaintiffs question read:

"SECOND: After the payment of my just debts, funeral expenses and expenses of administration, I direct my said executor hereinafter named to procure a responsible and reliable person to oversee and direct the building and construction of a mosoleum. (sic) Said mosoleum to be erected on the parcel of land purchased by me from Louise Ames as described in two deeds dated October 31, 1956 and August 27, 1958 and recorded in Knox Registry of Deeds in Book 366, Page 21 and Book 366, Page 346, said mosoleum and land never to be sold.

"Said mosoleum to be constructed of granite, cement and steel upon a suitable foundation. The cost of said mosoleum and foundation shall not exceed the sum of Twenty five thousand ($25,000.-00) Dollars.

"Said mosoleum to be constructed so as to accomodate (sic) the remains of my father, mother, brother, grandmother, myself and Faustina Coggan.

"I direct my said executor to have the remains of my said father, mother, brother and grandmother removed from the present resting place, in the family burial lot in the cemetery in Washington Village, and placed in said mosoleum. I further direct that the remains of each of the above named to be placed in marble boxes.

"I further direct my said executor to have constructed and built, a lawn around said mosoleum. Said lawn shall be One Hundred Fifty (150) feet East and West and One Hundred Fifty (150) feet North and South, and shall be kept mowed during the summer months of each year and shall be enclosed by an iron fence with a gate therein.

"I further direct my said executor to have the family monument, now standing on the family burial lot in said cemetery in Washington Village, to be removed

therefrom and located upon the lawn of said mosoleum.

"The directions and instructions contained in this paragraph, 'SECOND', shall be carried out by my said executor, only in the event that such a mosoleum is not erected during my lifetime.

"I further direct my said executor to reserve a right of way, across other land owned by me, from the highway to said mosoleum; at the time my said executor shall sell and convey said other land as hereinafter directed.

"THIRD. I give and bequeath the sum of Six Thousand ($6,000.00) Dollars, IN TRUST NEVERTHELESS, to the Augusta Savings Bank, Augusta, Maine, and its successors, for the following uses and purposes:

"(a) Said sum of Six Thousand ($6,-000.00) Dollars shall be deposited with said bank at the then current rate of interest, which shall accumulate and be added to said principal, if not fully used as hereinafter set forth.

"(b) Said Trustee shall each year procure a spray of flowers to cost not less than Fifty ($50.00) Dollars, and place the same upon or near my monument each Memorial Day and remove the same sixty days thereafter.

"(c) Said Trustee shall spend whatever it deems necessary from the income and principal, if necessary, of said trust for the mowing and care of the lawn, repair and upkeep of said mosoleum.

"(d) Said Trustee shall cause the door to said mosoleum to be opened on June Fifteenth of each year and closed on October Fifteenth of each year.

\* \* \* \* \* \*

"THIRTEENTH: All the rest, residue and remainder of my estate including all proceeds from the sale of said real and personal property, shall become a part of the principal of the trust hereinbefore created by clause 'THIRD' of this my Last Will and Testament, and the income therefrom used in accordance with the provisions of said clause 'THIRD'."

Prior to answering, defendant had moved for a more definite statement (M.R.C.P. Rule 12(e)) as to the nature of the controversy alleged to exist, following which it was agreed that plaintiffs' objections to these paragraphs of the will were as contained in a letter from plaintiffs' counsel to the attorney for the defendant dated October 17, 1966:

"The Plaintiffs regard the provision of Paragraph SECOND of Mr. Kaler's will as being null, void and of no effect for the reasons that (1) these provisions contravene the provisions of statute relating to the location of a structure intended to contain the remains of the dead (e. g., 13 M.R.S. § 1341); and (2) the Executor could not lawfully dig up and move to the proposed "mosoleum" the remains of the testator's father, mother, grandmother and Faustina Coggan as firected therein.

"The Plaintiffs regard the provisions of Paragraph THIRD and THIRTEENTH of this will as being null, void and of no effect for the same reasons and, additionally, for the reasons that (1) there is no cestui que trust or beneficiary who can take the benefit and compel the performance of the putative trust, and (2) the putative trust creates a perpetuity."

In a later letter dated April 25, 1967, plaintiffs' counsel agreed that he did not mean to suggest by the underlined abbreviation that he was invoking other statutory provisions, too, concerning the location of a structure intended to contain the remains of the dead. This letter was not seen by the Justice prior to his decree.

On May 4, 1967, hearing on plaintiffs' motion for summary judgment was had before a Justice of the Superior Court.

At the outset of the hearing defendant's counsel presented the Justice with a lengthy and thorough written brief on the principles of law involved and the issues presented in the motion were discussed orally by the Justice and both counsel. Plaintiffs were given until May 30, 1967, to file a brief and defendant's counsel was to have until June 12, 1967, to file a reply brief as the Justice stated that he would not be in a position to consider the case prior to June 12.

The Justice was not a resident of Knox County. Plaintiffs' counsel mailed his brief to the Justice at his office in his home county and the Justice received it there. Defendant's attorney mailed his reply brief to the Superior Court in Knox County where it was received on June 12 and became a part of the file of the case. It was not forwarded to the Justice who, we infer, was no longer holding court in Knox County. The Justice did not receive the defendant's reply brief.

On April 30, 1968, the Justice granted plaintiffs' motion for summary judgment determining paragraphs 2, 3 and 13 to be void. The matter comes here on defendant's appeal.

The defendant's Points on Appeal present the following issues:

1) Was there a denial of due process when the Court made its decision on plaintiffs' motion for summary judgment a) after hearing but without affording the parties a later opportunity to present evidence, b) without having received defendant's reply brief and c) without having seen some of the papers in the case which were in the file?

2) Were the testator's directions that his executor should erect such a mausoleum and remove to it the bodies of testator and five other persons void because a) they contravene the provisions of 13 M.R.S.A. Section 1341, and b) the executor has no power to disinter and remove the remains of the five other persons?

3) Was the testamentary trust described by the testator void because a) there is no cestui que trust who could compel performance and b) the putative trust creates a perpetuity?

*Due Process*

■ Plaintiffs' motion for summary judgment complied with the provisions of Rule 56, M.R.C.P. The facts alleged in plaintiffs' complaint had been admitted by the defendant's answer, including the allegation that the site designated for the erection of a mausoleum was not within the limits of a cemetery containing not less than twenty acres which had been in existence and actually used for burial purposes for a period of at least two years immediately preceding July 11, 1966. Plaintiffs' motion for summary judgment alleged that there was no genuine issue as to any material fact and defendant presented no affidavits of facts which would dispute or avoid the allegations of the complaint. The only issue remaining was for the Justice to determine and apply the rule of law applicable to the established facts. The matter had become one appropriate for disposition on the pleadings upon plaintiffs' motion. Field and McKusick, Maine Civil Practice, Section 56.1.

■ A hearing before a Justice on a motion for summary judgment is not a trial. If the Justice has been convinced by the party seeking the summary judgment that no genuine issue of fact exists it becomes his duty to render judgment upon a plaintiff's claim on the pleadings.

Here the pleadings consisted of 1) the complaint with copy of the will attached, 2) defendant's answer 3) plaintiffs' attorney's letter of October 17, 1966 stating plaintiffs' objections as to the paragraphs of the will which were under attack (written in compliance with defendant's request for admission) and the same attorney's letter of April 25, 1967. Although the original papers had not been forwarded to the Justice, copies of the complaint

and will, defendant's answer and plaintiffs' attorney's letter of October 17, 1966 were presented to him in or with counsel's briefs. It is not suggested that the copies were inaccurate.

After hearing oral arguments the Justice made it clear that he would proceed to decide the issue but not before June 12, 1967, and that defendant was to have until that date to submit his reply brief.

When that hearing was completed there was no necessity for presenting evidence at a later time. The issue was one of law. No opposing affidavits had been filed by defendant. The Justice's action in setting dates for the filing of plaintiffs' brief and defendant's reply brief and his statement that he would not be in a position to consider the case until June 12 (which was the date he had set for filing defendant's reply brief) argues strongly that only the filing of briefs remained to be done before the Justice's decision. The language of defendant's counsel's reply brief is convincing evidence that, at that time, he, too, considered that neither evidence nor more arguments were to follow.

█ The responsibility for presenting the reply brief to the Justice was that of the defendant. There was nothing arbitrary in the action of the Justice in proceeding to the determination of the case as he did, many months after the time for the filing of defendant's reply brief had expired. Defendant's counsel, no doubt familiar with the travel requirements of Justices of the Superior Court, sent the brief to the Clerk of Courts in Knox County rather than to the Justice's home office. There was no denial of due process. Defendant was given the right to be heard further but failed to avail himself of it.

It should also be observed that the reply brief consists only of this single sentence:

"Beyond quoting from the case of Ellms v. Ellms et als 140 Me. 171 at 175 [35 A.2d 651] as follows: 'Caution is sometimes necessary to prevent perversion of a testator's intention by an astute application of cases and so-called precedents, for in the matter of interpretation of wills, as Justice Whitehouse said in Wentworth v. Fernald, 92 Me., 282, 42 A., 550, 552: "The analogies afforded by precedents are helpful servants, but dangerous masters." ' suffice to say that the Defendant feels that the original Memorandum of Law filed by him plus an analysis of the authorities presented by the Plaintiff in his Brief at the time of hearing will place this Honorable Court in a position to decide the issues in *this* case and strength of the various matters of public policy and the effect they may have on the issues involved."

We are confident that this brief, lacking in substance as it was, could not have been determinative of the issue and that no prejudice to the defendant resulted from the Justice's failure to receive it.

No prejudice resulted to defendant from the fact that plaintiffs' counsel's letter of April 25, 1967 was not brought to the Justice's attention. As noted above, plaintiffs' attorney in stating his objections to paragraphs 2, 3, and 13 of Mr. Kaler's will had said that the paragraphs in issue "contravene the provisions of statute relating to the location of a structure intended to contain the remains of the dead (*e. g.* 13 M.R.S. Sec. 1341)."

While the abbreviation "e. g." does suggest that Section 1341 may not be the only statutory obstruction to the location of the planned mausoleum and while the Justice did not see plaintiffs' counsel's letter of April 25, 1967 limiting his objections to this paragraph, it appears to us from a reading of his decree that Section 1341 was the only statute relating to the location of structures intended to contain the remains of the dead which influenced the Justice's decision. It also controls our

decision. The defendant was not hurt by the fact that this second letter was not brought to the Justice's attention.

## STATUTORY OBSTRUCTION

The plaintiffs' motion for summary judgment presented the Justice with an issue of law as to whether that part of Mr. Kaler's will which directed his executor to erect the mausoleum described in the will was prohibited by the provisions of 13 M.R.S.A. Section 1341 which read:

"Every community mausoleum, other than a structure containing crypts erected or controlled by a church or a religious society and used only as a repository for the remains of the clergy or dignitaries of such church or religious society, and every crematory, columbarium or other structure intended to dispose of, or hold or contain the bodies or remains of the dead, shall be located only within the limits of a cemetery containing not less than 20 acres, which shall have been in existence and actually used for burial purposes for a period of at least 2 years immediately preceding the time of the erection thereof."

█ Section 1341 prohibits not only community mausoleums (with the exception relating to the clergy) but also all other structures intended to contain the bodies of the dead, unless located within the limits of an established cemetery of not less than 20 acres. The will's description of the proposed edifice and its purpose brings it within the prohibited classification unless it is located within an established cemetery of not less than 20 acres. Defendant's answer to plaintiffs' complaint admits that the proposed structure is not within such a cemetery. No issue of fact remained. Section 1341 forbids the structure proposed by Mr. Kaler.

We do not reach the question of the right of the executor to disinter and move the remains of the other proposed occupants of the mausoleum or of the absence of a named cestui que trust.

We do consider it useful, however, to discuss the plaintiffs' contention that the testator's directions that the mausoleum shall be maintained forever are barred by the rule against perpetuities which, if needed, would provide additional support for the Justice's decree.

█ The rule against perpetuity is a restriction which for reasons of public policy the common law has placed on the disposal of private property. The purpose is to prevent the tying up of property to the detriment of society in general. The rule permits the vesting of an interest or estate to be postponed only for a period of a life or lives in being and 21 years and 9 months thereafter. Any limitation over that period is void. Andrews v. Lincoln, 95 Me. 541, 50 A. 898, 56 L.R.A. 103 (1901); 41 Am.Jur., Perpetuities, Section 3; 70 C.J.S. Perpetuities § 3. The rule has been modified somewhat by statute in respects with which we are not here concerned. 33 M.R.S.A. Sections 101–106. There are exceptions to the rule which concern trusts created for charitable purposes. Snow v. President and Trustees of Bowdoin College, 133 Me. 195, 175 A. 268 (1934); 15 Am. Jur.2d, Charities, Section 19, 22; 70 C.J.S., *supra*, § 30.

In 1881 our Court applied the rule to an issue concerning a bequest of a sum of money in perpetual trust to keep the testator's burial lot in forever good order and condition. The Court concluded that the bequest "was not for any public purpose, beneficial to all" and therefore that the bequest, not being of a charitable nature, was void under the rule. Piper v. Moulton, 72 Me. 155. This decision is in accord with the general rule. Re Byrne's Estate, 98 N.H. 300, 100 A.2d 157, 47 A.L.R.2d 591 (1953); Clark v. Portland Burying Ground Association, 151 Conn. 527, 200 A.2d 468, 471 (1964). In the present case no affidavit was filed by the defendant which would suggest the existence of facts from which

it could be concluded that, in spite of the clear language of the will, the proposed creation of a mausoleum would be for a public purpose, beneficial to all.

Shortly after the decision in Piper v. Moulton, the Maine Legislature enacted P.L.1883, Chap. 117, Sec. 1 (now, with amendments which do not now concern us, 13 M.R.S.A., Sec. 1222) which modified the application of the rule against perpetuities to permit trusts in perpetuity for care of small, private cemetery lots. It reads, in part:

"Any city, town, cemetery corporation, trust company or trustee may accept any conveyance of land not exceeding ½ acre, to be forever held, kept and used for a private or family burying ground for the grantors and such of their heirs and relatives by blood or marriage as the conveyance shall designate."

It was noted by the Justice in his decree that Paragraph Second directs that the mausoleum be constructed upon a lot of land which, if circular, must contain more than one-half an acre. It would also necessarily exceed one-half acre if rectangular, even without the access right of way reserved across other land of the testator. Thus the proposed burying ground is not within the exemption created by Section 1222 and the bequest must fail as an attempt to create a perpetuity.

Appeal denied. The case is remanded to the Superior Court for allowance of reasonable counsel fees.