UNITED STATES of America, Plaintiff/Appellant,

v.

LEMBKE CONSTRUCTION CO., INC. Defendant/Appellee.

No. 85-2137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1985.

Decided April 11, 1986.

Kenneth Oestricher, Dept. of Justice, Washington, D.C., for plaintiff/appellant.

Doug Shook, James R. Broening, Crampton, Woods, Broening & Oberg, Phoenix, Ariz., for defendant/appellee.

Before SCHROEDER, CANBY and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The United States appeals the district court's judgment in favor of Lembke Construction Co., Inc. claiming that certain defects in the roof were latent. The United States sued Lembke, its contractor for the construction of a school. The district court concluded that (1) the defects were not latent, (2) the U.S. had accepted Lembke's performance on the contract knowing of roof problems, and (3) Lembke did not breach the contract. At issue is whether the district court erred in rejecting an expert's opinion as a basis for concluding that a defect is latent, when the opinion is based on evidence known prior to acceptance of the building.

## I. FACTS

On October 30, 1974, the United States, through the Bureau of Indian Affairs (BIA), and Lembke entered into the contract for constructing an addition to the Santa Rosa School. Lembke started construction in December 1974, and subsequently completed the building in December 1975. Final inspection of the addition was performed on January 6-9, 1976, and the school was turned over to the BIA for beneficial occupancy on February 25, 1976.

The design of the addition, prepared by architects Chopas, Starkovich and Associates, called for the construction of a two-way-post-tension flat roof over the class-

room area. This low roof consisted of several thirty-foot concrete spans supported by columns.

Soon after the addition was completed, Lembke received complaints of leaks, cracks, and deflections (sagging) in the roof. In April 1977, Lembke hired the firm of MacCornack & Burns to investigate the leaking and deflection problems. MacCornack & Burns concluded that the leaking and deflection problems were caused by excessive concrete creep or improper post-tensioning. The BIA was informed of MacCornack & Burns' conclusions.

On August 10, 1977, the government hired Portland Cement Association (PCA) to study the integrity and safety of the roof. On August 29, 1977, PCA issued a preliminary report indicating that the roof was structurally sound. PCA engineers visited the school several times between 1977 and 1979. Cracks and deflections in the roof were measured and compared in November 1977 and January 1978. In March 1979, PCA issued its final report concluding that the roof was structurally sound.

In the meantime, on December 28, 1978, the government wrote to Lembke advising that it had finally accepted the building and that final acceptance was to be effective as of July 13, 1977.

In June 1980, the government hired the engineering firm of Stearns-Roger Limited (Stearns-Roger) to perform an analysis of the roof structure of the school. Stearns-Roger issued a report in July 1980, concluding that the addition to the school lacked an adequate margin of safety. The BIA subsequently closed the school.

Stearns-Roger then suggested four options for repairing the roof: (1) restressing the tendons; (2) placing a steel superstructure on the present roof; (3) replacing the existing roof; or (4) rebuilding the entire school. The BIA chose the second option. The steel superstructure was placed on the roof in early 1982 at a cost of $681,000. Neither Lembke nor PCA was advised of the repairs or of Stearns-Roger's conclusion that the roof was unsafe.

The construction contract between the BIA and Lembke provides that: "Acceptance shall be final and conclusive except as regards latent defects, fraud, or such gross mistakes as may amount to fraud, or as regards the Government's rights under any warranty or guarantee." The government's sole contention is that defects in the roof were latent. The alleged defect is the inadequate margin of safety in the roof discovered by Stearns-Roger after final acceptance. The government argues that the defect was caused by construction error. Because we conclude that the district court did not err in not finding a latent defect, we need not reach the issue of whether the defect was caused by design or construction error.

## II. STANDARD OF REVIEW

The district court applied the proper test that a latent defect is "one which cannot be discovered by observation or inspection made with ordinary care." *Kaminer Construction Corp. v. United States*, 488 F.2d 980, 984, 203 Ct.Cl. 182 (1973). The district court determined that the defects described by Stearns-Roger were not latent, and further, that the defects were caused by design deficiencies rather than construction error.

■ To determine whether a defect is latent first requires determining the proper legal definition of the term. As indicated above, there is no dispute in this case as to that definition. The historical facts must then be applied to that definition. Because the nature of the inquiry required when applying the relevant rule of law to the facts is essentially factual, a determination of latency is treated as factual. *Kaminar Construction Corp.*, 488 F.2d at 985 (the determination of whether something constitutes a latent defect is a factual determination); *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.*, 436 F.2d 405, 411 (5th Cir.1971) (the case of a defective condition is a question of fact). *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied,* —— U.S.

——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Thus, we review for clear error the district court's decisions that the defect discovered by Stearns-Roger is not latent.

## III. ANALYSIS

■ The district court found that the government was fully aware of leaks, cracks, and deflections in the roof soon after the building was completed. Further, the court considered that the firms of Mac-Cornack & Burns and PCA informed the government that the leaking and deflection were caused by excessive concrete creep or improper post-tensioning. Both firms concluded the roof was structurally sound. The government concedes it was aware of both reports before accepting the building.

After acceptance, Stearns-Roger issued a report that the building was not safe. Although there is some conflict in the testimony, the physical evidence relied on by Stearns-Roger was either based on measurements taken by PCA or measurements substantially the same as those known to the government prior to final acceptance. The government concedes that Stearns-Roger was unable to make new measurements because the roof had been covered with a protective membrane. The only new evidence was uncovered when the building was torn apart to make repairs. This evidence was not materially different from that previously known. After careful consideration of the evidence, the district court concluded that the government failed to present sufficient evidence to prove that any defects in the building were latent. "All of the physical evidence relied on by Stearns-Roger was in BIA files before [acceptance] or could have been 'discovered by observation or inspection made with reasonable care.'"

The government, however, asserts that the district court erred as a matter of law in failing to recognize that a defect can be latent when its extent or significance is unknown. As Lembke points out, a government expert admitted that the structural problems documented by PCA before final acceptance should have put the government on notice that the school was suffering abnormal structural problems. The district court explained that

> the government had notice of the problems with the roof. There were a limited number of construction and design errors which could have caused the roof to crack, leak, and deflect, and the government knew what the possible errors were. These same errors are ones which could cause a roof to be unsafe. The only thing that changed after [acceptance] was that Stearns-Roger considered the cracks, leaks, and deflections, considered the possible causes of those problems, and concluded that in its opinion the roof lacked an adequate margin of safety.

Thus, the government's argument that it did not know the extent of the defect is not persuasive. It appears more likely that, after two consultants found the roof safe, the government found a third who concluded it was not safe. The condition of the building did not change significantly; only opinion as to whether it had an adequate margin of safety changed. A change in conclusion, where no new evidence has been considered, does not create a latent defect. The government has not met its burden of proving that the district court committed clear error.

## IV. CONCLUSION

Although the government may or may not have received what it bargained for in its contract with Lembke, the government after refusing acceptance of the building for three years, and after receiving the advice of several consultants, finally accepted the building. We affirm the district court because, on the record before us, the district court did not clearly err in finding that the defects in the roof were not latent.

AFFIRMED.