# Margaret Colby v. Phyllis Colby, David Matthews, Kenneth and Anne Rawson, Thomas and Vicki Matthews Eismeir, et al.

[596 A.2d 901]

No. 89-024

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed August 3, 1990;
Modified on Reargument August 2, 1991

234

*Richard E. Mullaly*, West Lebanon, New Hampshire, for Plaintiff-Appellee.

*Emily B. Tartter* of *Paterson & Walke, P.C.*, Montpelier, for Defendants-Appellants.

**Peck, J.** This is an appeal from a decree establishing ownership of certain property in plaintiff Margaret Colby and defendant Phyllis Colby, descendants of the original grantee, as against the other defendants who are descendants of the original grantor, and ordering sale of the property and division of the proceeds between plaintiff Margaret Colby and defendant Phyllis Colby. We reverse and remand for further proceedings.

This case began as an action for partition brought by Margaret Colby, as plaintiff, against her sister, defendant Phyllis Colby. The Colbys held title to the subject property as joint tenants. Thereafter, it appeared that David Matthews, the Rawsons, and the Eismeirs, descendants of the original grantor, might still have an interest in the Colby property, and they were subsequently added as parties defendant. For purposes of this appeal, however, the last named defendants are appellants, while plaintiff Margaret Colby and defendant Phyllis Colby are the appellees.

Grantor Benjamin Matthews owned several hundred acres in Fairlee, Vermont, including frontage on Lake Fairlee and a large summer residence. Grantee Clifton Colby was caretaker of Matthews' Fairlee property, and on October 10, 1963, Matthews conveyed to Colby an unimproved parcel of lakefront property about forty-six feet deep with about sixty-five feet of lake frontage. The deed includes the reservation to grantor, his heirs and assigns, of:

> the first option to repurchase the within conveyed premises in the event that Grantee, his heirs or assigns, shall desire to sell the same.

The reservation in the deed provides that the option price

> shall not exceed Five Hundred Dollars ($500) plus the cost, less reasonable depreciation, of any improvements made to such property, or the amount at which the Grantee, his heirs or assigns, are willing to sell to a third party, whichever is lower.

On October 11, 1967, grantor conveyed to Clifton Colby another parcel of land, also sixty-five feet wide but 245 feet deep, across Route 113 from the first parcel. The deed contains the same reservation. There was some evidence that the first transaction was for consideration of $500, and that the second was a gift.

Grantee built a three-bedroom camp on the lakeshore lot, with heat and running water. The trial court found that the present value of the camp and lot together was $90,000, but did not allocate the value between the lot and the improvements.

Defendants, other than Phyllis Colby, as the heirs of grantor, continue to own a substantial amount of property next to the Colby lots. Plaintiff Margaret Colby and defendant Phyllis Colby received their interests in the subject property by conveyances from their mother, who received it by a decree of distribution upon the original grantee's death. The trial court found that they had actual knowledge of the deed restrictions.

The trial court concluded that the right of first refusal contained in the deed reservation was an unreasonable restraint on alienation, and hence invalid. The heart of the court's rationale was stated as follows:

> The purpose of the clauses was to insure that only friends and relatives would occupy the lands once owned by B.A. Matthews. This purpose seems trivial when weighed against the larger public interest of allowing property to be freely marketable. Additionally, the restraint was of unlimited duration and the person originally imposing the restraint, B.A. Matthews, presently has no interest in the land surrounding the Colby lots. Under the *Restatement*, the presence of these factors mitigates against a finding of reasonableness and, therefore, the preemption clauses are unenforceable.

> This conclusion is further supported by comparing the present fair market value of the camp and lot, that is

$90,000, with its fixed sale price of $500 plus improvements under the preemptive clauses.

The court ruled that the lots should be sold in a commercially reasonable manner, and that the proceeds should be divided between Margaret and Phyllis after the latter was compensated out of the proceeds for certain expenses.

In sum, the court considered four factors: (1) the unlimited duration of the restriction, in violation of the rule against perpetuities; (2) the low repurchase price; (3) the "public interest of allowing property to be freely marketable"; and (4) the lack of a present interest in Benjamin Matthews in the land surrounding the Colby lots.

■■ The trial court was correct that restraints on alienation are not favored, and that the reasonableness of a restraint turns on a variety of factors. The court's own findings, however, do not support its conclusion that the restrictions were invalid in this case. First, 27 V.S.A. § 501[1] operates to reform documents drafted in violation of the rule against perpetuities to carry out the grantor's wishes most closely without violating the rule. We explained the operation of § 501 in *Burgess v. Howe*, 134 Vt. 370, 372, 359 A.2d 652, 653 (1976):

> Vermont has, by passing 27 V.S.A. § 501, aligned itself in a group of states adopting what is known as a "wait and see" rule concerning perpetuities. This rule says that if, at the time of the event, the common law measure given as "lives in being and twenty-one years" has not been violated, there is no violation of the rule.

Appellees argue that § 501 should be narrowly construed, since it is in derogation of the common law and that no event has "triggered" operation of the statute. Whether narrowly or

---

[1] 27 V.S.A. § 501 states as follows:

Any interest in real or personal property which would violate the rule against perpetuities shall be reformed, within the limits of that rule, to approximate most closely the intention of the creator of the interest. In determining whether an interest would violate said rule and in reforming an interest the period of perpetuities shall be measured by actual rather than possible events.

Appellants called the court's attention to this statute both in a trial memorandum and in their motion to alter or amend·judgment.

broadly construed, however, appellees. fail to offer any construction of § 501 that would make it inapplicable to the instrument in question. It is unclear what kind of "trigger" appellees would require. They themselves raised the issue of the rule against perpetuities, and the dates of conveyance, the ages of lives in being, and the present date are all matters that are clear or readily ascertainable. The "trigger" is the event raising the issue of the exercise of the preemptive right. *Burgess v. Howe*, 134 Vt. at 373, 359 A.2d at 654; *Gilbert v. Union College*, 343 S.W.2d 829, 830 (Ky. 1961). Appellees' suggestion that we must wait until twenty-one years after lives in being before determining whether the subject instrument violates the rule is the very possibility that § 501 was meant to address.

The question of the enforceability of the covenants does not end with the perpetuities issue, however. The court's second, and perhaps central, ground for declaring the option invalid was its low price. The trial court cites Restatement of Property § 406[2] as a starting point in weighing the validity of a fixed-price preemptive right, in the absence of specific Vermont authority on the question. The court did not consider fully the Restatement criterion, however, and analyze whether the low price stated in the preemptive right was "reasonable under the circumstances." The court's findings of fact reflect much of the background of the original conveyances from appellants' predecessor to appellees' and provide the basis for such analysis. Clifton Colby was employed by Benjamin Matthews as caretaker of the land and buildings owned by Matthews. The court found: "[A] friendship developed between the two families over the years," and "[t]he original purpose of the preemptive rights

---

[2] Restatement of the Law of Property § 406 (1944) states in relevant part:
[A] restraint on the alienation of a legal possessory estate in fee simple which is, or but for the restraint would be, indefeasible is valid if, and only if,

(a) the restraint is a promissory restraint or a forfeiture restraint, and

(b) the restraint is qualified so as to permit alienation to some though not all possible alienees, and ·

(c) the restraint is reasonable under the circumstances, and

(d) if the restraint is a forfeiture restraint, the requirements of the rule against perpetuities are satisfied.

clauses in the deeds was to insure that the land originally owned by B.A. Matthews was occupied only by friends and relatives of B.A. Matthews." It appears from the amount of the consideration for the original sales, the relationship of the parties, the purpose of the rights, and the text of the clauses themselves that the transfer to Clifton Colby was designed to allow Colby to enjoy the property conveyed for his lifetime and thereafter for the enjoyment of his descendants, so long as the property remained in the family.

There are numerous ways that this purpose could have been accomplished, but Benjamin Matthews chose to make conveyances with the retention of preemptive rights. The preemptive right was an important precondition to the original sale. As the court said of a sale that uniquely served seller and buyer in *Lawson v. Redmoor Corp.*, 37 Wash. App. 351, 356, 679 P.2d 972, 975 (1984):

> [T]he parties who made the contract had a definite purpose in mind and both benefitted from the agreement. [Purchaser] purchased a parcel of land in reliance on the right to obtain the remainder of the parcel and paid valuable consideration for the preemptive right. The [sellers] wanted to sell the initial parcel, which [purchaser] would not purchase without the preemptive right. . . . The agreement achieved the purpose of encouraging the sale of the original parcel, providing the [sellers] with cash from that sale, and enabling them to remain in their home.

Based on the facts found by the trial court, it is doubtful that the original transaction would have occurred but for the restraint. As in *Lawson*, the preemptive right clause was initially an encouragement to the alienation of property, rather than a restraint on it. See *Edgar v. Hunt*, 218 Mont. 30, 33–34, 706 P.2d 120, 122 (1985) (fixed-price preemptive right not void as a matter of law; court must determine reasonableness under the circumstances, including whether the restraint promoted the original transfer of the property); *Emerson v. King*, 118 N.H. 684, 687–88, 394 A.2d 51, 54 (1978) (fixed-price repurchase option was reasonable in that both parties benefited; grantor would not have sold property without the provision).

The current market value of the property is a proper factor to consider in weighing the reasonableness of a re-

purchase option, but a great disparity does not automatically invalidate such a repurchase option. See *Barnhart v. McKinney*, 235 Kan. 511, 523, 682 P.2d 112, 121 (1984) (option in purchasers to purchase sellers' retained parcel at $200/acre plus "the cost of any permanent improvements" held not unreasonable, despite "disparity in price due to subsequent inflation or market conditions"); *Randolph v. Terrell*, 768 S.W.2d 736, 739–40 (Tex. Civ. App. 1987) (repurchase option for grantors' lifetimes at purchase price plus "an additional fair amount for any improvements" held not an unreasonable promissory restraint on alienation under Restatement rule); *Wilson v. Whinery*, 37 Wash. App. 24, 27, 678 P.2d 354, 356 (1984) (disparity between purchase price provided in right of first refusal and the subsequent market price of the property did not invalidate the right of first refusal).

In the present case, the disparity between the option price and the fair market value is a natural consequence of the initial arrangement between the parties. The price for the original transfer was nominal, and the option price restores the original nominal consideration and repays appellees for the amounts spent on improvements during their tenure and that of their predecessors. No inequity is apparent. See *Tovrea v. Umphress*, 27 Ariz. App. 513, 518–20, 556 P.2d 814, 819–21 (1976) (first refusal at small sum plus cost of improvements plus one-half market value held valid where corporate grantor had conveyed estate for same small sum, and land under option abutted optionee's place of business). Appellees could not reasonably have expected that the sums they spent on improvements would mean they would be paid market value upon disposition because the initiating agreement was clearly to the contrary. Moreover, the agreement served the interest of both grantor and grantee for many years by increasing the access to and use of a large parcel of adjacent property.

The trial court concluded that the grantor's purpose of insuring that only friends and relatives would occupy the grantor's lands was "trivial when weighed against the larger public interest of allowing property to be freely marketable." In assuming that there is a latent public right or interest in the grantor's property, the court applied the wrong standard. The grantor's purpose was sufficient if it transgressed no legal

norms and did not result in an unreasonable restraint on alienation. *Kershner v. Hurlbert*, 277 S.W.2d 619, 626 (Mo. 1955) (fixed-price repurchase option is not per se invalid as long as it accomplishes "any desirable objective").

■ Finally, the trial court erred in concluding that the option rights should not be enforced because Benjamin Matthews "presently has no interest in the land surrounding the Colby lots." It is plain that Matthews' successors in interest have an interest in the land surrounding the Colby lots and clear beyond question that the "interest" intended by the Restatement should not expire ipso facto with the death of the grantor.

■ In sum, the repurchase options in the 1963 and 1967 conveyances by Benjamin Matthews are valid and enforceable. Whether the options have been triggered, however, remains to be determined. The trial court found that Margaret and Phyllis Colby agreed to sell the property and ordered sale of the property at fair market value. Margaret Colby moved the court to amend its finding and reconsider its order. The trial court amended the finding but ordered the sale nonetheless. Margaret Colby did not appeal the order, but the order was largely favorable to her. The record on appeal is insufficient to determine whether in these circumstances the options should be deemed triggered or not. We note that involuntary sales are not deemed to trigger repurchase options where the language of the options state that triggering occurs by a choice or a desire to sell. See *Henderson v. Millis*, 373 N.W.2d 497, 502–03 (Iowa 1985) (where option triggered if parcel owners "elect to sell," involuntary sale did not trigger option); cf. *Hornsby v. Holt*, 257 Ga. 341, 343, 359 S.E.2d 646, 649 (1987) (where election to sell triggered option, option deemed triggered because grantor of option "put the wheel in motion for the sale"). Even an unequivocal desire to sell under one circumstance, here a fair-market-value sale, is not always deemed a desire to sell according to the terms of a valid option. See *Gyurkey v. Babler*, 103 Idaho 663, 668, 651 P.2d 928, 933 (1982) (owner should not be compelled to sell property where never intended to sell on terms and conditions of the option); *Guaclides v. Kruse*, 67 N.J. Super. 348, 356–57, 170 A.2d 488, 493, *cert. denied*, 36 N.J. 32, 174 A.2d 658 (1961) (intent to sell large plot may not be taken as manifesta-

tion of intent to sell smaller-included parcel subject to option); *Chapman v. Mutual Life Insurance Co. of New York*, 800 P.2d 1147, 1150–51 (Wyo. 1990) (same). Thus, the case is remanded for determination of (a) whether the options were triggered and (b) the appropriate remedy in light of our conclusion that the repurchase options are valid.

*Reversed and remanded for proceedings consistent with this opinion.*