Strafford
No. 93-186

GERALD AND JANICE PAGE

v.

WILLIAM WILLEY d/b/a SLEEPING BEAR CONSTRUCTION

September 26, 1994

*Cooper, Hall, Whittum & Shillaber, P.C.,* of Rochester (*Daniel J. Harkinson* on the brief and orally), for the plaintiffs.

*Gary R. Cassavechia,* of Rochester, by brief and orally, for the defendant.

THAYER, J. The defendant, William Willey, appeals from an order of the Superior Court (*Coffey,* J.) finding that his installation of a defectively undersized culvert caused a large section of the plaintiffs' yard to erode during a heavy rain storm. The defendant argues, *inter alia,* that the trial court erred in allowing the plaintiffs, Gerald and Janice Page, to sue under an implied warranty theory because the defect, if any, was not latent, and in awarding costs associated with preparing the plaintiffs' expert for trial. We reverse.

In 1985, Richard and Angela Gray, prior owners of the lot in question, hired the defendant to fill a large depression on the property and to install a culvert to handle the runoff from a seasonal stream that ran through the depression. The defendant installed a one-hundred-foot section of culvert measuring fifteen inches in diameter, although the upstream culvert measured twenty-four inches in diameter.

In 1988, the plaintiffs purchased the property from the Grays. At the time of the purchase, the plaintiffs hired a home inspector who, on his checklist, indicated that yard drainage was "adequate." On August 19, 1991, during Hurricane Bob, the water level rose several feet above the top of the culvert's mouth, cresting over a land bridge that the defendant had constructed. The overflow cut a one-hundred-foot gully, measuring up to six feet deep and twenty-five feet wide, across the plaintiffs' driveway and front yard. The plaintiffs paid $4600 to repair the damage.

The plaintiffs' expert testified that because the defendant failed to install a culvert of at least the diameter of the twenty-four-inch upstream culvert, his work on the culvert was not up to the standards of the industry, and was not workmanlike in quality. The trial court found, based upon this testimony, that the defendant's work was defective; it further found that the defect was latent and could not have been discovered upon a reasonable inspection by the plaintiffs.

■ The defendant argues that, even assuming that the erosion was caused by a defectively undersized culvert, the trial court erred in allowing the plaintiffs to sue under an implied warranty of workmanlike quality because the defect was not latent as required by *Lempke v. Dagenais,* 130 N.H. 782, 547 A.2d 290 (1988). The trial court's determination of the latency of a defect is a mixed question of law and fact. We will overturn the trial court's determination if it is clearly erroneous. *See Great Lakes Aircraft Co. v. City of Claremont,* 135 N.H. 270, 282, 608 A.2d 840, 848 (1992). "If, however, the court misapplies the law to its factual

findings, we review the result on appeal independently under a plain error standard." *Id.*

■ The applicable law is found in *Lempke,* where we ruled that the implied warranty of workmanlike quality would extend to subsequent purchasers of the property *only* in cases of "latent defects which become manifest after the subsequent owner's purchase and which were not discoverable had a reasonable inspection of the structure been made prior to the purchase." *Lempke,* 130 N.H. at 794, 547 A.2d at 297 (quotation omitted). The defendant contends that to the extent the defective feature of the culvert was its size, such a defect cannot be considered "latent" because the size of both the culvert and upstream culvert could easily have been observed upon a reasonable inspection. We agree. The trial court found that the diameter and length of both culverts were at all times known or discoverable by both the plaintiffs and the defendant. Both the plaintiffs' expert and the trial court relied in part upon the size difference in finding the defendant's work defective. We hold that where all of the relevant facts underlying the alleged defect are known or discoverable to the subsequent purchaser upon reasonable inspection at the time of the purchase, no claim for latent defects can later arise. *See, e.g., United States v. Lempke Const. Co., Inc.,* 786 F.2d 1386, 1388 (9th Cir. 1986) (where government knew all facts relating to defect before acceptance of the property, defect not latent merely because a later assessment of the same facts changed conclusion as to defective quality). The trial court thus erred in applying the law to its findings of fact.

*Reversed.*

HORTON, J., with whom BATCHELDER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: Because I would not define the term "latent defect" as narrowly as the majority does, I dissent.

In *Lempke v. Dagenais,* 130 N.H. 782, 547 A.2d 290 (1988), we held that privity of contract is not necessary for a subsequent purchaser to sue a contractor under an implied warranty theory for latent defects, defining latent defects as those "which become manifest after the subsequent owner's purchase and which were *not discoverable had a reasonable inspection . . . been made prior to the purchase." Id.* at 794, 547 A.2d at 297 (quotation omitted) (emphasis added). The majority holds that even assuming the culvert was defectively undersized, that defect was not latent

because the size of the Pages' culvert and the upstream culvert could have been observed upon a reasonable inspection; in the words of the majority, there can be no latency "where all of the relevant facts underlying the alleged defect are known or discoverable to the subsequent purchaser upon reasonable inspection at the time of the purchase."

I would not equate visibility with a lack of latency. Instead, I would hold that the question is not whether the object itself, or its physical qualities, would be obvious to a purchaser upon a reasonable inspection, but rather whether the *defective condition* would be obvious. *See Kala Investments, Inc. v. Sklar,* 538 So. 2d 909, 913 (Fla. Dist. Ct. App. 1989). In other words, a defect is patent only if it would be visible and appreciated upon a reasonable inspection. Further, the reasonable inspection is one by the purchaser, not by an expert. *See Tyus v. Resta,* 476 A.2d 427, 433 (Pa. Super. 1984). Where an object's physical characteristics are plainly visible, the latency test should be whether a reasonable layperson would appreciate that those characteristics constitute a defective condition. Applying such a test, in some cases the factfinder might conclude that the defective condition could be appreciated by the application of common sense, while in other cases the factfinder might conclude that appreciation of the defective condition would require expertise beyond that expected of the layperson. Considering that, in this case, even the home inspector did not believe the culvert defectively undersized, the trial court could well have found, as it did, that the plaintiffs reasonably failed to recognize the defect.

The latency rule announced by the majority purports to envision a reasonable inspection by the purchaser; however, because the majority equates visibility with patency, it essentially charges the purchaser with the knowledge of an expert. I would not charge the purchaser with this unrealistic level of knowledge, and would hold that, under *Lempke,* a purchaser who sees, but reasonably does not appreciate, a defect should be entitled to sue the contractor who was responsible for that defect.

BATCHELDER, J., joins in the dissent.