[No. 17-40280-2.    Division Two.    October 30, 1969.]

WILLIAM H. THOMPSON et al., *Appellants,* v. HOWARD O. THOMPSON et al., *Respondents.*

*John A. Bishop* and *Garry A. Cunningham,* for appellants.

*Skeel, McKelvey, Henke, Evenson & Uhlmann* and *Willard E. Skeel,* for respondents.

ARMSTRONG, C. J.—This is an appeal from the dismissal of plaintiffs' action for specific performance of a conditional option clause contained in a real-estate contract, and for alternative relief in damages.

The dispute arises from a real-estate contract executed between the plaintiffs, William H. Thompson and his wife, Margaret, as buyers, and the defendants, Howard O. Thompson and his wife, Jessie Doris (now deceased), as sellers.[1] William Thompson is the son of Howard O. Thompson and Jessie Doris Thompson.

The contract was for the sale of a tract of land located in Kitsap County, which we shall refer to as parcel A. It contained a provision giving plaintiffs a conditional option to purchase additional land, hereinafter referred to as par-

---

[1]Howard O. Thompson is now deceased and the representative of his estate has been substituted in this appeal.

cels B and C, upon which the family home buildings were located. The option provision read as follows:

That in addition to the purchase of the above described property [parcel A], the purchasers herein shall have an Option to purchase the below described property [parcels B and C] for a consideration of $6,000.00 upon the same terms as herein provided, either from the sellers herein, at such times as they may desire to sell, or from their Estates.

Plaintiffs completed payments under the contract in 1963 and received a warranty fulfillment deed to parcel A. The deed made no reference to the option on parcels B and C. The deed to parcel A was promptly recorded, but the real-estate contract was not recorded until May 31, 1966. The recording of the real-estate contract was delayed because defendant Howard O. Thompson requested that plaintiff William H. Thompson not record it.

Sometime in May of 1966, defendant Thompson informed plaintiffs that he had an offer of $25,000 for parcels B and C from a third party and he offered plaintiffs the opportunity to purchase the land at that price. Testimony of defendant Thompson concerning the incident is as follows:

Q. And at that time you offered to sell him the property for $25,000.00? A. That's correct. I would give him a chance to purchase if he wanted to. All I said to him was "I have had an offer, would you be interested in the purchase of the property?" Q. You did offer to sell it to him at that time? A. I wondered if he would be interested in buying it for $25,000.00, yes.

Plaintiff then tendered payment of the $6,000 option price in accordance with the terms of the original contract which provided for payments of $50 per month. This tender was refused. Monthly payments have been tendered since that time.

On August 26, 1966, defendant Thompson conveyed parcels B and C to his sister, defendant Helen Elizabeth Wenner. The quitclaim deed recited that the conveyance was "as a gift and as a consideration of love and affection." Defendant Wenner was aware of the option provided in the

real-estate contract. At the time of the conveyance, or shortly thereafter, defendant Wenner made a will leaving everything to her brother, defendant Thompson.

On October 17, 1966, defendant Wenner sold parcel B to defendants Carl N. and Beryl N. Ekman for $10,000, and parcel C to defendant Services Investment Company for $18,500. Defendants Ekman and Services Investment Company are also respondents herein.

The trial court found the relationship between defendants such as to arouse suspicion that defendant Thompson's gift to defendant Wenner was not bona fide, but found the evidence insufficient to establish fraud.

Plaintiffs sought specific performance of the option. The complaint was amended at trial to include a prayer for alternative damages measured by the difference between the $6,000 option price and the $28,500 selling price of parcels B and C. A counterclaim for $250 on a personal loan to plaintiffs was made by defendant Thompson. The plaintiffs did not dispute the loan which was unrelated to the option transaction.

Defendant Washington Mutual Savings Bank was dismissed on a stipulation that it hold the payments received from defendants Ekman and Services Investment Company pending this appeal and further order of the trial court.

Defendant Thompson's counterclaim of the $250 personal loan was allowed and judgment entered accordingly. Plaintiffs appeal from that part of the judgment dismissing their complaint and quieting title in defendant Wenner.

The first issue is whether defendant Thompson was obligated to convey parcels B and C to plaintiffs when they tendered payment under the terms of the original contract in attempting to exercise the option. By the terms of the option provision it could not be exercised until defendant Thompson desired to sell. Plaintiffs contend that this condition was satisfied in May of 1966 when defendant Thompson told of the offer by a third party and offered to sell parcels B and C to plaintiffs for $25,000.

We agree that the condition of the option was satis-

fied by defendant Thompson's expression of his desire to sell parcels B and C. At this point the option became unconditional. *Superior Portland Cement, Inc., v. Pacific Coast Cement Co.,* 33 Wn.2d 169, 205 P.2d 597 (1949). Plaintiffs' tender of payments at the $6,000 option price was a valid exercise of the option. The condition of the option having been satisfied and the option right having been exercised, defendant Thompson was obligated to convey parcels B and C to plaintiffs at the $6,000 option price under the terms of payment of the original contract.

■■ The option was supported by adequate consideration since it was included in the original contract to purchase parcel A and consideration was given under the terms of the contract. *Wetherbee v. Gary,* 62 Wn.2d 123, 381 P.2d 237 (1963). The terms of the option comprised a contract binding on defendant Thompson as the option giver. The plaintiffs, as holders of the option, held a valuable property right. Correlative to this right, the option giver was under a duty not to *"repudiate or make performance impossible or more difficult* by conveying the land to a third person." *McFerran v. Heroux,* 44 Wn.2d 631, 638, 269 P.2d 815 (1954).

In the case at bar defendant Thompson attempted to repudiate the option after plaintiffs tendered payment and by quitclaim deed conveyed the property as a gift to his sister, defendant Wenner, in an apparent attempt to make performance on his part impossible.

Contention has been made that the option is subject to a defense of laches because it was not exercised within a reasonable time. There could be two time questions. The first one is whether the condition that the option was not exercisable until defendant Thompson desired to sell was of an enforceable duration. The second one is whether the plaintiffs exercised the option within a reasonable time after it became exercisable. The evidence demonstrates that the option was exercised a few days after defendant Thompson offered the property for sale to plaintiff William H. Thompson. This was the first opportunity he had to

exercise the option. Therefore, the only remaining question relates to whether the option, by the terms of its conditions, could be exercised within a reasonable time.

The provision in question indicated that it extends to the time of death of both the father and mother of plaintiff William H. Thompson since it refers to buying from their estates. The option fixes the time in effect as at such time as they desire to sell or at the death of the survivor of them.

■ If we were to construe this option as fixing no definite time we would be subject to the rule that it must be exercised within a reasonable time. Restatement of Contracts § 46 (1932). *See also* 91 C.J.S. *Vendor and Purchaser* § 4 (1955); and 17A. C.J.S. *Contracts* § 632, (1963). What is a reasonable time is to be determined by the circumstances of the case. Considering the familial relationship, the apparent purpose of the parties that the parents live on the property as long as they desired and for the son and his wife to eventually take it and the "estate" language in the option, we do not believe that the 12-year interval between the granting and the exercise of the option was excessive.

■ In reaching this determination we are not unmindful of the disparity in values between the agreed upon figure of $6,000 at $50 per month, and the actual value of the property in question. We feel compelled to enforce the option terms for the same reason stated in *Union Oil Co. v. Hale*, 163 Wash. 503, 505, 2 P.2d 87 (1931):

> "Under the rules of construction applicable to contracts generally, a provision in a lease giving an option to purchase will be so construed as to effectuate the intention of the parties where it is ascertainable from the language employed by them, and where the parties express without ambiguity their intention, no room for juridical construction is left and no court can alter their agreement, although the bargain is hard or unwise." 35 C.J. 1040.

Although the quotation refers to a lease, it applies with equal force to a real-estate contract under the facts of this case.

■ We are next presented with the question of whether defendants Ekman and Services Investment Company are bona fide purchasers. We find that they are not because they had constructive notice of the option to purchase. Plaintiffs recorded the real-esate contract containing the option prior to defendant Thompson's conveyance to defendant Wenner and her subsequent conveyances to defendants Ekman and Services Investment Company.

The judgment of the trial court is reversed and the cause is remanded with direction to grant specific performance to plaintiffs unless defendants Thompson (or the estate), Wenner, Services Investment Company and Ekman tender payment of damages within 60 days of the date the remittitur is entered. Damages will be fixed at the difference between the agreed upon option value of $6,000 and the sale price of parcels B and C of $28,500, namely the sum of $22,500.

PEARSON and PETRIE, JJ., concur.