[No. 1983–3.    Division Three.    January 27, 1978.]

WILLIAM A. TOMBARI, ET AL, *Appellants,* v. BLANKENSHIP–DIXON COMPANY, ET AL, *Respondents.*

146

*Michael J. Hemovich* and *Hemovich, Smith & Nappi,* for appellants.

*W. Kenneth Jones, MacGillivray, Jones, Clarke, Schiffner & Johnson, Horton Herman, Gary Dahlke,* and *Paine, Lowe, Coffin, Herman & O'Kelly,* for respondents.

BRADFORD, J.*—The Tombaris and Delays appeal from a judgment denying specific performance of a preemptive right for the purchase of one–third of a shopping center site at one–third of its value. Alternatively, they seek to compel formation of a new corporation to hold title to the shopping center site. Respondent Western Real Property cross–appeals from an order denying the costs of taking published depositions. We affirm the denial of specific performance of the preemptive right and the refusal to compel formation of the corporation. We reverse the order denying the costs of taking published depositions.

This case involves the interpretation and construction of an agreement dated May 3, 1966, wherein Blankenship–Dixon Co., a corporation, Tombari and Delay, a partnership, and Suburban Subdividers, Inc., a corporation, agreed to exchange their properties so that each would become an

---

*Judge Albert N. Bradford is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

owner of a one–third interest in a prospective shopping center site. The disputed provisions in the agreement are as follows:

(4) Any party wishing to withdraw from this contract may do so by giving thirty days notice by certified mail to the other parties of his election to sell his interest and the other two parties shall equally have the first option to purchase said interest at any time within ninety days from the date of mailing said notice at the price herein stated from the withdrawing party, and provided further in the event the withdrawing party shall offer said interest to a third party for any amount after the remaining parties shall have rejected their election to purchase, then prior to said sale to any third party the withdrawing party shall re–offer for ninety days the sale of his interest to the other parties on the same terms and conditions as offered to any third party. The offer to be made by the withdrawing party to the remaining parties shall be computed at the rate of $1,000.00 per acre plus any other costs expended with approval of the parties as herein provided in addition to simple compound interest at the rate of 4 per cent per annum from the date title to the shopping center was acquired. The terms of purchase shall be one–third cash as a down payment and the balance shall be due in two equal annual installments plus 6 per cent interest on the declining balance. In the event of any transfer of title aforesaid, the grantor shall convey good merchantable title free from encumbrances insured by a recognized title company.

(5) When the exact location of the shopping center has been determined and the zoning approved by the Planning Commission of the City of Spokane, and the parties hereto agree to form a Washington corporation to which title to the shopping center shall be conveyed in consideration of which stock shall be issued equally to the parties to this agreement, and in case any stockholder in said corporation wishes to withdraw therefrom he may do so upon the same terms and conditions as set forth in paragraph 4 for the disposal of his interest in the shopping center prior to completion. Upon completion of the corporation and transfer of title to the shopping center to it, this contract shall be of no further force or effect. The shareholders will enter into an agreement with reference to the sale of the stock in said corporation under the

same terms and conditions as contained in paragraph 4 of this agreement, provided that ninety days prior to construction of a shopping center on the property herein referred to and thereafter, that portion of paragraph 4 hereinafter set forth will no longer be applicable:

> "The offer to be made by the withdrawing party to the remaining parties shall be computed at the rate of $1,000 per acre plus any other costs expended with approval of the parties as herein provided in addition to simple compound interest at the rate of 4 per cent per annum from the date title to the shopping center was acquired."

All other provisions contained in paragraph 4 shall remain in full force and effect.

The Tombaris and Delays contend Blankenship has breached paragraph 4 of the May 3, 1966, agreement by granting options to others to purchase one–third of the shopping center site, and they are thereby entitled to specific performance of the preemptive right to purchase Blankenship's property. The Tombaris and Delays further contend that even if the court fails to grant specific performance of paragraph 4, the court should order Blankenship to form a new corporation in accordance with paragraph 5.

The first issue is whether the preemptive right created by paragraph 4 of the agreement is void because it violates the rule against perpetuities, and constitutes an unreasonable restraint against alienation. Washington has adopted a wait and see attitude towards interests created in trust which violate the rule against perpetuities. RCW 11.98.010 and .020. It is not necessary, however, for us to decide here whether the rule in its orthodox form persists as to other interests because this preemptive right constitutes an unreasonable restraint against alienation.

■ Generally, unreasonable restraints on the alienation of real property are invalid. *Bellingham First Fed. Sav. & Loan Ass'n v. Garrison*, 87 Wn.2d 437, 553 P.2d 1090 (1976); *Shoemaker v. Shaug*, 5 Wn. App. 700, 490 P.2d 439 (1971). A preemptive right to purchase land at a fixed price has been held to constitute an unreasonable restraint

against alienation. *Kershner v. Hurlburt,* 277 S.W.2d 619 (Mo. 1955); 6 American Law of Property § 26.67 (A.J. Casner ed. 1952); Restatement of Property § 413, Comment on Subsection. (2), Clause (a), at 2444 (1944); Annot., 40 A.L.R.3d 920 (1971). In *Kershner v. Hurlburt, supra* at 626, the court stated:

> The parties knew at the time the contract was executed that if the value of the lots substantially increased, the owners of either the east or west half of the lots would not offer their property to the owners of the other property at the fixed price of $1,275. And they knew that if property values remained stationary or decreased, they had obtained no substantial advantage by reason of the contract. Thus, in view of the provisions of this contract, it would appear that the parties had no other stated purpose, and could have accomplished nothing more, than to arbitrarily restrain the alienation of the lots for the lives of the respective parties. It does not appear that there was any relation between the restraint imposed and the accomplishment of any purpose other than the prevention of a sale. The restraint imposed was, at best, to require an option to come into being, but the restraint imposed effectively prevented that option from ever arising.
>
> It follows that no socially or economically desirable objective could be accomplished by enforcing this contract despite the restraint on alienation brought about by the contingency of the substantial increase in the value of this land. Under these circumstances, we are of the opinion that the contract constituted an unreasonable restraint on the alienation of this property and for that reason, the trial court correctly refused to grant relief to appellants.

(Citations omitted.)

In the present case, the market value of the land has increased from $1,000 per acre, the fixed price, to $3,000 per acre, the admitted value at the time of trial. Obviously, the 4 percent interest rate provided for in paragraph 4 of the agreement does not adequately reflect the appreciation of the land's value. The only apparent purpose of the preemptive right is to restrain alienation. In addition, since

two corporations are parties to the agreement, the restraint is potentially perpetual. *See* RCW 23A.08.020. Therefore, the trial court correctly refused to compel specific performance of this preemptive right.

■ Tombari and Delay next contend they are, nevertheless, entitled to specific performance of paragraph 5 of the agreement which provides for formation of a new corporation to hold title to the shopping center site. A contract is not subject to specific performance unless the precise acts sought to be compelled are clearly ascertainable. *State ex rel. Bain v. Clallam County Bd. of County Comm'rs,* 77 Wn.2d 542, 463 P.2d 617 (1970). As noted by the trial court, the precise nature of the proposed corporation is not spelled out in the agreement. It is not clear whether it is to promote and conduct the business of the shopping center or only hold title. Furthermore, there are no provisions as to voting rights, directors, et cetera. Therefore, since there is uncertainty as to whether the parties ever agreed on these terms, specific performance must be denied. 5A A. Corbin, *Contracts* § 1174, at 290 (1964).

■ Finally, respondent Western Real Properties assigns error, on cross appeal, to the court's refusal to tax costs of $507, for taking depositions. Appellant does not respond in its reply brief to this assignment of error. No testimony was taken at trial in the case. The facts presented to the court were contained in the pretrial order, the published depositions, and the exhibits. The judge indicated he had reviewed the published depositions, and specifically referred to statements in Mr. Tombari's deposition in his memorandum opinion and findings of fact. The record indicates these depositions were taken and used for trial purposes. Under these circumstances, respondent Western Real Properties is entitled to the costs of taking depositions. *See Most Worshipful Prince Hall Grand Lodge v. Most Worshipful Universal Grand Lodge,* 62 Wn.2d 28, 381 P.2d 130 (1963); RCW 4.84.090.

Therefore, this cause is remanded to the trial court to

retax costs, and as modified, the judgment is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied March 7, 1978.

Review denied by Supreme Court August 25, 1978.