[No. 10652–0–I.   Division One.   March 12, 1984.]

RICHARD D. WILSON, *Respondent,* v. WILLIAM D. WHINERY, JR., ET AL, *Appellants.*

*McGavick, Graves, Beale, McNerthney & Gagliardi* and *Robert L. Beale,* for appellants.

*Monte E. Hester,* for respondent.

SCHOLFIELD, J.—The estate of William D. Whinery and Gwendolyn S. Whinery (hereafter Whinerys) appeal a judgment quieting title to a parcel of real property in Richard D. Wilson, pursuant to a right of first refusal. The Whinerys allege the right of first refusal is void as an unreasonable restraint on alienation, no "sale" of the property took place, the trial judge erred in excluding evidence, and the trial judge erred in failing to reform a lease agreement to either include a 20–year term or declare a year–to–year tenancy. We affirm.

In 1975, The Whinerys sold Wilson a parcel of property (parcel A), and in conjunction with the conveyance, the Whinerys also granted Wilson a right of first refusal[1] to an adjacent parcel, parcel B, and granted Wilson sole and exclusive rights to water from three existing wells on parcel B. The deed indicating Wilson's water rights and right of first refusal was recorded in May 1978.

In 1979, the Whinerys sold two other parcels of land

---

[1]The "First Right of Refusal" provided in part:

"THE GRANTORS . . . hereby grant unto RICHARD WILSON, Grantee, the first right to purchase the property described below for a price not to exceed $3,500.00, or for such lesser price as may be offered to Grantors by a bona fide purchaser. If Grantors elect to sell the below–described property, they shall first notify Grantee, in writing, who shall have twenty (20) days thereafter from which to pay over to Grantors the sum of $3,500.00, or such lesser sum as Grantors have indicated has been offered by a bona fide purchaser."

(parcel C) to Matson. Parcel C was contiguous to both parcel B and a parcel the Whinerys retained, but parcel C would not support a drain field. As part of the Matson real estate contract, Whinery granted an easement for a drain field on parcel B. The conveyance of the easement substantially reduced the market value of parcel B. At the same time, and apparently as part of the same transaction, the Whinerys leased parcel B to Matson. At trial, the judge excluded testimony which would have established that the Whinerys and the Matsons intended the term of the lease to be 20 years. The lease essentially granted Matson all remaining beneficial uses of parcel B. Both the lease and the easement were recorded.

After the sale, easement, and lease transaction with Matson, the Whinerys quitclaimed all remaining interest in parcel B to their daughter as a gift. Wilson was never advised of any of these transactions or given the opportunity to purchase any of the interests.

When Wilson learned of the transactions, he properly tendered the $3,500 purchase price provided in the agreement granting him the right of first refusal. The Whinerys refused Wilson's tender, denying they had "sold" parcel B. Wilson filed a complaint on January 30, 1980, seeking title to the property. He was granted the relief sought in his amended complaint, and the Whinerys appeal that judgment, challenging the trial judge's conclusions of law.

The Whinerys first contend the instrument creating Wilson's right of first refusal is void because it created an unreasonable restraint on alienation. They argue that where the price to be paid upon the exercise of a right of first refusal is substantially less than the market value, it operates as an unreasonable restraint on alienation of the property, citing *Tombari v. Blankenship–Dixon Co.,* 19 Wn. App. 145, 574 P.2d 401 (1978).

A right of first refusal is a valuable prerogative, limiting the owner's right to freely dispose of his property by compelling him to offer it first to the party who has the first right to buy. *Northwest Television Club, Inc. v. Gross*

*Seattle, Inc.,* 26 Wn. App. 111, 116, 612 P.2d 422 (1980), *aff'd in part, rev'd in part,* 96 Wn.2d 973, 640 P.2d 710 (1981). The question before the trial court was whether the restraint on the Whinerys' alienation of their property was reasonable under the circumstances and for a legitimate purpose. *Tombari v. Blankenship–Dixon Co., supra; Kershner v. Hurlburt,* 277 S.W.2d 619 (Mo. 1955). The preemptive right to purchase invalidated in *Tombari* was distinguishable in several respects.

In *Tombari,* no consideration was paid for the "option" to purchase. Wilson paid valuable consideration for his right to purchase parcel B at the same time he negotiated and purchased parcel A. The disparity between the purchase price provided in Wilson's right of first refusal and the subsequent market value of the property does not render the right of first refusal invalid. *Thompson v. Thompson,* 1 Wn. App. 196, 460 P.2d 679 (1969).

Additionally, in *Tombari,* the "only apparent purpose of the preemptive right [to purchase] is to restrain alienation." *Tombari,* at 149. Wilson's purpose in purchasing his right of first refusal was to enable him to buy the neighboring property if it was offered for sale. The Whinerys' purpose in granting the right was to facilitate sale of parcel A to Wilson.

In *Tombari,* because two corporations were parties to the agreement, the agreement created a restraint on alienation which was potentially perpetual. RCW 23A.08.020(1). Wilson's right is personal and does not survive him—therefore, the potential for perpetuality is not present here.

Finally, in *Tombari,* the rights to purchase were mutually beneficial, contemplated future dealings, and were intended to protect the interests of both parties by preventing sales to others. The Whinerys, on the other hand, made an arm's length business transaction with Wilson. There is no evidence they contemplated future dealings for mutual benefit.

Before the *Tombari* decision, Washington courts upheld rights of first refusal as reasonable contractual rights, even

where they established a fixed price. *Thompson v. Thompson, supra.*

Wilson's right of first refusal was a reasonable condition agreed upon for a legitimate purpose, and the trial judge correctly concluded it was not an unreasonable restraint on alienation.

The Whinerys next contend the trial judge erred in concluding their acts constituted a "sale" of the property. The Whinerys argue the trial judge first erroneously concluded that the instrument creating Wilson's right was ambiguous, then proceeded to incorrectly interpret the meaning of the word "sell." The Whinerys contend the document was not ambiguous, and the standard rules of contract interpretation require the court to apply the meaning that would be attached by a reasonably intelligent person, and give terms the usual and ordinary meaning. *Honeywell, Inc. v. Babcock,* 68 Wn.2d 239, 412 P.2d 511 (1966). We agree that the document was not ambiguous, but hold that the trial judge nevertheless reached the correct result.

To sell property burdened with a right of first refusal a seller must (1) give the promisee notice of a third party's offer and of his intention to accept that offer; (2) allow the promisee to submit a competing offer; and (3) reject the promisee's offer, if any, only on the basis of a reasonable justification. *Prince v. Elm Inv. Co.,* 649 P.2d 820, 826 (Utah 1982).[2] It was undisputed that the Whinerys did none of the above acts before transferring the perpetual easement, lease, and remainder interests in parcel B.

The Whinerys had a duty not to repudiate or make their own performance impossible or more difficult by conveying the land to a third person. *Thompson v. Thompson,* 1 Wn. App. at 200. *See also McFerran v. Heroux,* 44 Wn.2d 631, 638, 269 P.2d 815 (1954). The Whinerys do not challenge the trial judge's findings that "the parcel is not marketable

---

[2]Although the facts in *Prince v. Elm Inv. Co.,* 649 P.2d 820 (Utah 1982) involved a lessor who conveyed leased property without first offering the property to the lessee, the facts are sufficiently similar to allow useful analogy.

*[sic]* building site when [subject] to Matson[']s easement. . . . Approximately 90% of the value of the property was conveyed to the Matsons in the granting of said easement." Finding of fact 20.

For the purposes of a right of first refusal, a "sale" of the property occurs upon the transfer for value of a significant interest in the subject property, to a stranger, who thereby gains substantial control over the property. *Prince v. Elm Inv. Co.,* 649 P.2d at 823. All of the elements of a sale occurred when the Whinerys transferred to Matson, for value, 90 percent of the value of parcel B, thereby granting him substantial control over parcel B. The trial judge correctly concluded that the Whinerys' transfer of all beneficial use of parcel B was the equivalent of a sale of the property, triggering Wilson's right of first refusal. Under the express terms of the agreement, the Whinerys were not free to sell their property to Matson, but were compelled to first offer it to Wilson. *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 26 Wn. App. 111, 116, 612 P.2d 422 (1980), *aff'd in part, rev'd in part,* 96 Wn.2d 973, 640 P.2d 710 (1981). *See also Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 441 P.2d 128 (1968).

Because we uphold the trial judge's conclusion that a "sale" of the property took place when the Whinerys transferred the perpetual drain field easement to Matson, we need not address the Whinerys' remaining allegations of error in the judge's exclusion of evidence.

The decision of the trial court is affirmed.

CORBETT, A.C.J., and RINGOLD, J., concur.

Reconsideration denied April 5, 1984.

Review denied by Supreme Court May 25, 1984.