2015 APR -5 AM 10: 5_


# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LEROY DOPPENBERG, | ) | |
| | ) | No. 71346-9-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF LABOR AND INDUSTRIES AND | ) | |
| EAGLE HYDRAULICS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) | FILED: <u>April 6, 2015</u> |

SPEARMAN, C.J. — Leroy Doppenberg challenges the trial court's finding that his industrial injury did not worsen between the date his claim under the Industrial Insurance Act, Title 51 RCW (Act) was initially closed and the date his application to reopen the claim was denied, approximately two years later. He argues that the trial court improperly allowed the Department of Labor and Industries (Department) to relitigate the nature and extent of his industrial injury, an issue that was definitively established by the Department's final order on his claim. He also contends that the trial court's award of statutory attorney fees and costs to the Department was improper. We conclude that the Department's final order on the claim was res judicata as to the extent of Doppenberg's industrial injury at the time of the order, but not as to any subsequent aggravation of the injury alleged in his application to reopen the claim. We also find no error in the

trial court's award of statutory attorney fees and costs to the Department. We affirm.

FACTS

On March 16, 2007, Leroy Doppenberg was injured during the course of employment when a heavy steel plate fell onto his right calf and rolled around, injuring his right ankle and foot. He filed an application for benefits under the Act. The Department allowed the claim and Doppenberg received treatment and other benefits under the Act. On April 25, 2008, the Department determined:

> The [Department] is not responsible for the condition diagnosed as lumbar stenosis, determined by medical evidence to be unrelated to the accepted condition under this [industrial] injury for which the claim was filed.

CABR at 46. It does not appear that Doppenberg objected to this finding. The Department did accept responsibility for:

> the condition diagnosed as right peroneal nerve injury, determined by medical evidence to be related to the accepted condition under this [industrial injury] for which this claim is filed.

CABR at 47. It issued a notice and order to that effect on June 26, 2008. It does not appear that either party objected to the order or took steps to modify it in any way. The Department issued an order closing Doppenberg's claim, which was affirmed by the Department on May 12, 2009.

Eighteen months later, Doppenberg filed an application to reopen his claim on the basis that symptoms related to his industrial injury had worsened. The Department issued an order denying his application, finding that "the medical record shows the conditions caused by the injury have not worsened since the final claim closure, . . ." Certified Appeal Board Record (CABR) at 47. This order

2

was affirmed on June 2, 2011. Doppenberg appealed the order denying his application to the Board of Industrial Appeals (Board), which conducted an evidentiary hearing.

At the hearing, Doppenberg testified that he filed the application based on new and worsening symptoms. He testified that, shortly after sustaining the injury, his right foot "felt like someone was beating on [it] with a sledgehammer" but, by the time his initial claim was closed, this feeling had lessened in intensity to a "tingling sensation" similar to pin pricks. CABR (Doppenberg) at 7-8. Doppenberg testified that after his claim was closed, the unpleasant sensation in his foot worsened again. He stated:

> It's really prominent if I stand on it for any length of period of time, or walking any distance, it just starts, you know, feeling like you are stepping on nails. The longer I walk on it, the farther it feels like it jabs into the foot, into the right foot.

CABR (Doppenberg) at 8. Doppenberg also complained of new mechanical difficulties with his right foot. He explained:

> [M]y foot was not working right. It's just not right. I mean, if I walk any slope—if I walk on a slope towards the left, my foot just wants to fall off from underneath me all the time. If I walk on a hill on the right, you know, I can walk on it fairly easily.[1]

CABR (Doppenberg) at 9.

Dr. Wardle, a board certified foot and ankle podiatrist who assisted Doppenberg in filing the application, testified at the hearing by deposition.

---

[1] Doppenberg's testimony describes the condition of ankle weakness causing difficulty in clearing the foot from the ground when walking, referred to throughout the Board and trial court proceedings, as well as the parties' briefs, as "foot drop" or "drop foot." See, CABR (Soo) at 14.

According to Dr. Wardle, he began treating Doppenberg in November of 2010. At that time, Doppenberg complained of discomfort in his right foot. On examination, Dr. Wardle was able to observe edema around the ankle and mid foot as well as diminished sensation over the right foot when compared to the left. A magnetic resonance imaging (MRI) revealed "chronic injury to [Doppenberg's] lateral ligaments and no bone abnormality and the tendons were intact." CABR (Wardle) at 10. Dr. Wardle explained that the collateral ligaments are located on the outside of the ankle and are responsible for ankle stability. Based on his examination and the MRI findings, Dr. Wardle concluded, on a more probable than not basis, that Doppenberg's industrial injury was a nerve contusion that caused ongoing ankle and foot pain and that his condition had worsened since his claim was closed in 2009. However, Dr. Wardle acknowledged that "[a]lcohol intake can aggravate any kind of nerve injury." CABR (Wardle) at 22. And he agreed that both nerve injury and foot drop "can be aggravated or caused by a lumbar radiculaopathy[2]."CABR (Wardle) at 22.

Two additional doctors testified by deposition on behalf of the Department. Dr. Soo, a board certified podiatrist, stated that he had treated Doppenberg for sensory disturbances and weakness in his right ankle and foot shortly after he sustained his industrial injury in 2007. Dr. Soo explained that there are two branches of the peroneal nerve relevant to this case—the common and superficial peroneal nerves. The common peroneal nerve is located under the knee and controls the muscle and tendons of the foot. The superficial peroneal

---

[2] Such as Doppenberg's back condition.

4

nerve, which runs along the top of the foot, is a sensory nerve that does not control any muscles. Injury to the superficial peroneal nerve can cause a "disturbance of sensation," such as a numbing or tingling sensation in the foot, but cannot cause mechanical difficulties.

Based on his knowledge of the mechanics of Doppenberg's industrial injury and his understanding of the anatomy of the leg and ankle, Dr. Soo diagnosed Doppenberg's industrial injury as a bruised right foot with injury to the superficial peroneal nerve "running to the top of the foot." CABR (Soo) at 10. Dr. Soo opined, on a more probable than not basis, that Doppenberg's right ankle weakness and foot drop was not caused by the industrial injury, which affected only the superficial peroneal nerve and its sensory functions. He explained that Doppenberg's right ankle weakness and foot drop was likely related to a separate condition—peripheral neuropathy—which, based on Dr. Soo's examination, was afflicting both of Doppenberg's lower legs. Dr. Soo explained that the neuropathy could have been caused by Doppenberg's preexisting low back injury[3] or by a systemic issue, such as prolonged alcohol abuse, which Doppenberg had admittedly struggled with in the past.

Dr. Almaraz, a board certified neurologist, rendered an opinion based on an independent medical evaluation of Doppenberg in 2010 and extensive record review. He opined that the only condition accepted under Doppenberg's claim was "right foot ankle strain." CABR (Almaraz) at 41. He also acknowledged that

---

[3] The lumbar stenosis acknowledged by the Department during proceedings on Doppenberg's initial claim as a preexisting condition unrelated to the industrial injury.

5

he could not find evidence in the records that Doppenberg suffered from any type of neuropathy prior to the industrial injury.

After considering this testimony, as well as testimony from Doppenberg's brother, sister, and ex-wife, the Board issued a proposed decision and order denying Doppenberg's application on September 26, 2012. Doppenberg filed a petition for review, which requested reversal of the proposed decision and order on the grounds that it was "completely silent regarding the *res judicata* effect of the Department's June 26, 2008 order accepting right peroneal nerve injury under the claim." CABR at 6. The Board denied his petition and adopted the proposed decision and order as its final decision on November 30, 2012.

Doppenberg appealed the Board's decision to the King County Superior Court. At trial, the depositions of Drs. Wardle, Soo, and Almaraz were read to the jury, as were the transcripts of proceedings from the questioning of Doppenberg, his brother, sister, and ex-wife. At the close of trial, the jury rendered a verdict that the Board had correctly determined Doppenberg's industrial injury did not objectively worsen between May 12, 2009 and June 2, 2011. On October 10, 2013, the trial court entered a judgment and order as the final determination in this matter. Doppenberg filed a motion for a new trial and reconsideration pursuant to Superior Court Civil Rules 50 and 59. The trial court denied the motion. Doppenberg appeals.

## DISCUSSION

### Res Judicata

An order or judgment of the Department resting upon findings of fact becomes a complete and final adjudication, binding upon both the Department and the claimant unless such action is set aside on appeal or is vacated for fraud or something of like nature. Marley v. Dep't of Labor and Indus., 125 Wn.2d. 533, 537-39, 886 P.2d 189 (1994) (citing Le Bire v. Dep't of L&I, 14 Wn.2d 407, 415, 128 P.2d 308 (1942)). If a party fails to timely object to the Department's order, the party is precluded from relitigating any claim subject to the order. Id. at 538. However, in the absence of a clear and unmistakable final finding on the cause of a worker's worsened condition, the parties are not precluded, on a claim of aggravation of an industrial injury, from litigating the causal relationship between the industrial injury and the worker's worsened condition. King v. Dep't of Labor and Indus., 12 Wn. App. 1, 4, 528 P.2d 271 (1974).

In this case, the Department entered a final order on Doppenberg's claim on June 26, 2008, which states:

> **The DLI is responsible for the condition diagnosed as right peroneal nerve injury**, determined by medical evidence to be related to the accepted condition under this industrial injury for which this claim was filed.[4]

CABR at 47 (emphasis added). Doppenberg argues that this unchallenged order is res judicata as to the nature and extent of his industrial injury and that the Department was, therefore, precluded from presenting evidence related to

---

[4] The order contains no further detail on the nature or extent of the industrial injury subject to the order or its related symptoms.

7

whether his industrial injury caused the new and worsened symptoms alleged in his application to reopen the claim. But the June 26 order is only res judicata as to the extent of his injury existing at the time of the order; it is not res judicata as to any aggravation of the injury occurring subsequent to that date. King, 12 Wn. App. at 5 (citing Karness v. Dep't of Labor & Indus., 39 Wn.2d 898, 239 P.2d 555 (1952)).

Contrary to Doppenberg's claims, the Department did not introduce "a myriad of evidence designed to call [the] res judicata acceptance of right peroneal nerve injury into question." Brief of Appellant at 24. In fact, the Department conceded at trial that Doppenberg sustained an injury to his right peroneal nerve, as recognized in the June 26 order.[5] Instead, the Department presented evidence in support of its theory that Doppenberg's industrial injury was simply not the cause of his new symptoms. This included evidence of the nature and location of the injury to Doppenberg's right peroneal nerve, the new symptoms one might expect from a similar injury, and alternative theories of causation for the symptoms of which Doppenberg complained, i.e., Doppenberg's alcohol consumption and/or his preexisting low back condition. Because the June 26 order did not preclude the admission of this evidence on the lack of a causal relationship between Doppenberg's industrial injury and his worsened condition, the trial court did not err in allowing the Department to present it.

---

[5] The Department did, however, present evidence that the accident that caused Doppenberg's injury could only injure one branch of Doppenberg's right peroneal nerve and that his newly maligned symptoms could not be caused by this type of injury.

## Jury Instruction

Doppenberg also asserts that the trial court's refusal to give his proposed instruction 11[6] was error. We disagree.

Jury instructions are sufficient when they allow a party to argue his or her theory of the case, are not misleading, and, when read as a whole, properly inform the jury of the applicable law. Leeper v. Dep't of Labor & Indus., 123 Wn.2d 803, 809, 872 P.2d 507 (1994). We review a trial court's failure to give a proposed instruction for abuse of discretion. Id.

Doppenberg's proposed instruction 11 advised the jury as follows:

> The Worker's Compensation Act of this state applies to all persons engaged in employment, regardless of their age or the previous condition of their health.
> In determining the effect of an industrial accident upon a worker, such effect must always be determined with reference to the particular worker involved, rather than what effect, if any, such an accident would have had, if any, upon some other person.

CP at 102. It is undisputed that the proposed instruction is a correct statement of the law. See Wendt v. Dep't of Labor & Indus., 18 Wn. App 674, 676, 571 P.2d 229 (1977). The question is whether it was necessary to give the instruction in order to permit Doppenberg to argue his theory of the case. Doppenberg contends it was because the proposed instruction allowed him to rebut the Department's theory that his "prior physical conditions worsened rather than the industrially related condition...." Brief of Appellant at 28. But even assuming this

---

[6] During the colloquy on the parties' proposed jury instruction, both parties and the trial court referred to proposed instruction 11 as instruction 3. It is evident from the transcript that the court may have renumbered the instructions prior to this colloquy. Regardless, it is clear from the discussion that the court was considering Doppenberg's proposed instruction 11.

properly characterizes the Department's theory of the case, the theory addresses whether the cause of Doppenberg's new symptoms was a worsening of the industrial injury or a prior condition unrelated to the industrial injury. Indeed, the issue was presented to the jury as whether "the Board of Industrial Insurance Appeals [was] correct when it determined that between May 12th, 2009 and June 2nd, 2011, Mr. Doppenberg's condition proximately caused by the March 16, 2007 industrial injury did not objectively worsen[.]" CP at 165.

On that issue, the Department's witness, Dr. Soo, testified that Doppenberg's industrial injury had not worsened but that instead, his new symptoms were from a different cause, bilateral peripheral neuropathy, which was solely the result of his lower back injury and/or prolonged alcohol abuse. In contrast, Doppenberg's witness, Dr. Wardle, testified that, while Doppenberg's industrial injury—the right peroneal nerve injury—was the most probable cause of his ongoing ankle and foot pain and weakness, his back injury and alcohol abuse could also have aggravated his nerve injury, contributing to his symptoms.

The jury was instructed on the issue of proximate cause in instruction 13, as follows:

> A cause of a condition is a proximate cause if it is related to the condition in two ways: (1) the cause produced the condition in a direct sequence, unbroken by any new independent cause, and (2) the condition would not have happened in the absence of the cause.
> There may be one or more proximate causes of a condition. For a worker to recover benefits under the Industrial Insurance Act, the incident must be a proximate cause of the alleged condition for which entitlement to benefits is sought. The law does not require that the incident be the sole proximate cause of such condition.[7]

---

[7] See 6A WASH. PRAC., WASHINGTON PATTERN JURY INSTR.: CIVIL WPI 155.06.02 (6TH ED.)

CP at 184. This instruction was sufficient to allow Doppenberg and the Department to argue their respective theories as to the cause of Doppenberg's new symptoms. The trial court did not abuse its discretion when it refused to give Doppenberg's proposed instruction 11.

<u>Statutory Attorney Fees and Costs</u>

Doppenberg challenges the trial court's award of $200 in statutory attorney fees pursuant to RCW 4.84.010(6). We find his argument without merit.

RCW 51.52.140 addresses attorney fees and costs a workers' compensation appeal to superior court. It states, in relevant part, "Except as otherwise provided in this chapter, the practice in civil cases shall apply to appeals prescribed in this chapter." Accordingly, absent a contrary statute in RCW 51.52, the ordinary civil practice, including its cost provisions, applies to superior court proceedings.

Doppenberg argues that the legislature intended for RCW 51.52.130 to be the exclusive statutory provision for attorney fees in a workers' compensation appeal to superior court. He argues that, "[c]onsistent with the Act's remedial purpose and the legislature's intent that injured workers have access to adequate legal representation in appeals to superior court, the Act does *not* provide attorney fees or costs on appeal to superior court to employers or to the Department." Br. of Appellant at 18. In his view, application of statutory provisions not contained in the Act, such as RCW 4.84.010(6), controverts legislative purpose. He further asserts that RCW 51.52.130, which applies

specifically to workers' compensation appeals to superior court, prevails over the more general provisions of RCW 4.84.010 and 4.84.030.

But Washington courts have expressly rejected the argument that RCW 51.52.130 precludes an award of statutory attorney fees to the Department as prevailing party in superior court review of a workers' compensation claim. Frecenak v. Dep't of Labor & Indus., 142 Wn. App. 713, 729-30, 175 P.3d 1109 (2008) (affirming an award of statutory attorney fees on the grounds that the nominal fees authorized by the RCW 4.84.030 are different than those governed by RCW 51.52.130, which concerns actual attorney fees incurred by an injured worker or employer on appeal to the superior or appellate court), affirmed on other grounds sub nom, Kustura v. Dep't of Labor & Indus., 169 Wn.2d 81, 233 P.3d 853 (2010); see also, Black v. Dep't of Labor & Indus. of the State of Wash., 131 Wn.2d 547, 557-58, 933 P.2d 1025, 1031 (1997); Allan v. Dep't of Labor & Indus., 66 Wn. App. 415, 422-23, 832 P.2d 489 (1992). Under this authority, the Department, as prevailing party, was plainly entitled to an award of statutory attorney fees.[8]

Doppenberg also contends that the trial court's award of $691 in deposition transcription fees under RCW 4.84.010 was improper. We disagree.

RCW 4.84.010(7) provides that a prevailing party may recover the cost of transcribing depositions as follows:

> To the extent that the court or arbitrator finds that it was necessary to achieve the successful result, the reasonable expense of the transcription of depositions used at trial or at the mandatory

---

[8] Doppenberg does not claim that the amount of the award here--$200—was improper.

12

arbitration hearing: PROVIDED, That the expenses of depositions shall be allowed on a pro rata basis for those portions of the depositions introduced into evidence or used for purposes of impeachment.

Doppenberg argues that the Department's transcription costs in this case are not recoverable under this provision because, since the transcripts were published by the Board as part of the CABR, associated transcription costs are a cost of litigation before the Board, not the superior court. He notes that "[t]he Department incurs these costs in its role as the trustee of Washington State's workers' compensation fund. These costs remain whether or not an appeal to superior court is ever filed." Brief of Appellant at 21.

But Doppenberg's focus on when the cost of transcription was incurred is misguided. RCW 4.84.010(7) does not distinguish between transcription costs incurred during a superior court action and those incurred during proceedings before the Board or elsewhere. Rather, the statute conditions an award of transcription costs on whether the depositions were "used at trial" and "necessary to achieve the successful result." RCW 4.84.010(7).

Doppenberg cites Tombari v. Blankenship-Dixon Co., 19 Wn. App. 145, 150, 754 P.2d 401 (1978), in support of his position that deposition expenses are not recoverable costs unless taken for trial purposes. But the case is not helpful for several reasons. First, the case did not interpret the "used at trial" and "necessary to achieve the successful result" language of RCW 4.84.010(7). Instead, the case interprets RCW 4.84.090, which permits an award of "the necessary expenses of taking depositions" to the prevailing party. Id. (citing RCW 4.84.090). Additionally, Tombari did not hold, as Doppenberg suggests, that a

party is only entitled to its deposition costs if the depositions were both taken and used for trial purposes. Id. Rather, it merely acknowledged that where a trial court's decision was based solely on a pretrial order, exhibits, and transcripts of depositions "taken and used for trial purposes," an award of transcription costs was appropriate. Id. Finally, to the extent that Tombari can be interpreted as a limitation on the availability of transcription costs to those depositions "taken for" trial, the case has been superseded by enactment of RCW 4.84.010(7), which, by its plain language, lacks such a restriction. Compare, RCW 4.84.010(7) (enacted in 1983), with, Tombari, 19 Wn. App. at 150 (decided in 1978); see also, Laws of 1983, 1st Ex. Sess., ch. 45 § 7.

In this case, both conditions for an award of transcription costs under RCW 4.84.010(7) are met. The depositions of Dr. Soo and Dr. Almaraz were read to the jury and were, therefore, "used at trial." See, VRP (9/11/13) at 80-114, 126-79. Further, the Department's theory that Doppenberg's new and worsening symptoms had a cause independent from the industrial injury depended on these doctors' medical causation testimony; thus, their testimony was necessary to achieve a successful result. The Department was entitled to an award of transcription costs.

We also affirm the amount of the award in this case. Doppenberg notes that portions of the depositions in this case were redacted by agreement of the parties or by order of the trial court and were not read to the jury. He contends that an award based on these redacted portions was improper. Although Doppenberg is correct that the Department was entitled only to a pro rata award

based on those "portions of the depositions introduced into evidence or used for purposes of impeachment," he fails to provide copies of the redacted depositions or any other evidence of the extent of the redactions. RCW 4.84.010(7). Thus, the record is inadequate for this court to assess the trial court's award of transcription costs. Because Doppenberg bore the burden of perfecting the record on appeal, we decline to grant him relief as to the amount of the award. See, Bulzomi v. Dep't of Labor & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994).

Finally, Doppenberg challenges the trial court's award of the $125 jury demand fee, arguing that the award has no basis in the law. The argument lacks merit. RCW 4.84.010 states that a prevailing party may obtain "costs otherwise authorized by law" in addition to those enumerated in the statute. A related title, chapter 4.44 RCW (Trial), provides: "[t]he jury fee paid by the party demanding a trial by jury shall be a part of the taxable costs in such action." RCW 4.44.110. Doppenberg is thus incorrect that there is no statutory basis for the award of the jury demand fee. To the extent he argues that only those costs enumerated in RCW 4.48.010 are recoverable under the statute, this argument has been expressly rejected by our supreme court. Blair v. Wash. State Univ., 108 Wn.2d 558, 572, 740 P.2d 1379 (1987) (holding that RCW 4.84.010 did not limit the costs recoverable in a discrimination action where the relevant discrimination statute includes an applicable cost provision).

<u>Attorney Fees and Costs on Appeal</u>

Doppenberg requests an award of reasonable attorney fees and costs on appeal pursuant to RAP 18.1(a) and RCW 51.52.130. Together, these provisions allow appellate courts to award a worker or beneficiary who, on appeal from the decision and order of the Board, successfully obtains reversal or modification of the decision and order and additional relief. Here, Doppenberg fails to obtain reversal, modification, or other relief from this court. Thus, we decline his request for an award of reasonable attorney fees and costs on appeal.

Affirmed.

WE CONCUR: