

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SANDRA J. KEATLEY,

           Respondent,

      v.

DUANE BRUNER,

           Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 74849-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: May 23, 2016

BECKER, J. — This appeal is from a judgment and an award of specific performance entered after a bench trial of an action for breach of a contract to sell real property. Substantial evidence supports the trial court's findings of fact and the parties' agreement provides material terms sufficient to support enforcement by specific performance. We therefore affirm.

## FACTS

This matter was called for a bench trial in December 2014. According to unchallenged findings of fact, appellant Duane Bruner and respondent Sandra Keatley were involved in an intimate, familial relationship from 1982 through 2002. During this time, Bruner purchased the property at issue, 10 acres on Chapman Road in Castle Rock. The property had been in Keatley's family for many years. Bruner and Keatley developed the property together with a home

and a shop. Bruner built a barn on the land that Keatley used, in conjunction with property she owned to the north to run a cattle operation.

On March 23, 2005, Keatley and Bruner, without the help of attorneys, coauthored and executed a contract wherein Bruner agreed to sell the Chapman Road property to Keatley for $295,000. Although they entitled the contract as an "Earnest Money Receipt and Agreement," the trial court found that they "intended to create an open-ended purchase option contract." The trial court based this finding on the lack of a closing date, the uncontroverted testimony that the date was left open intentionally to allow Keatley time to find financing to purchase the property, and the parties' actions after they executed the contract.

Keatley and Bruner continued to use the property jointly until October 2010. During this time, Keatley asked Bruner at least every three months whether he wanted or needed to close on the March 2005 contract. Bruner repeatedly assured Keatley that he was in no hurry and that there was no need to close on the sale. Keatley relied on those assurances. Until October 2010, she continued to make daily use of the property under the assumption that Bruner would sell the land to her pursuant to the contract. Keatley is a businesswoman with substantial assets. The court found that but for Bruner's assurances, Keatley could have and would have marshaled her assets to purchase the property at the stated price.

In October 2010, Keatley demanded closing. Bruner refused. For the first time, he claimed that the contract had expired. By this time, the fair market value of the property was $500,000.

2

Keatley commenced this litigation in February 2011. One of her claims was for dissolution of a committed intimate relationship. That claim was dismissed on a motion for summary judgment. This appeal involves only Keatley's claim for breach of contract, in which she sought to compel Bruner to convey the property to her at the agreed price.

The contract is titled "Earnest Money Receipt and Agreement." It is dated March 22, 2005, at Castle Rock. It designates Bruner as "seller" and Keatley as "purchaser" and is signed by each. It states that Keatley agrees to purchase the property described and Bruner agrees to sell it. The contract recites Bruner's acknowledgement of receipt of a check for $1,000 as earnest money:

> Parcel# WK2713005 located at 1176 Chapman Road and adjacent Parcel# WK2713007. Total land being approximately 10 acres.
>
> TOTAL PURCHASE PRICE IS: $295,000.00 Dollars.
>
> 1. Title of Seller is to be free of encumbrances or defects.
>
> 2. Earnest Money: Purchaser hereby deposits, and receipt is hereby acknowledged of, ONE THOUSAND ($1,000.00) DOLLARS, evidenced by personal check paid or delivered as earnest money in part payment of the purchase price for the aforedescribed real estate.

The trial court concluded the parties "entered into an enforceable written agreement" under which Keatley would purchase and Bruner would sell the Chapman Road property for $295,000. Concluding that Bruner breached the contract in October 2010, the court entered judgment for Keatley.

The Chapman Road property had been in Keatley's family for many years before Bruner acquired title. Keatley played a large role in the design and placement of the home on the property, which was built within one foot of the

3

boundary line of Keatley's adjacent land, and she used the property for years to run a cattle operation. The court found that the property was unique to Keatley. The judgment ordered Bruner to convey the property to Keatley free and clear of all encumbrances in exchange for $295,000.

## CONSIDERATION

On appeal, Bruner first assigns error to finding of fact F insofar as it states: "Keatley paid Bruner the $1,000.00 in earnest money called for by the contract." Keatley testified that she handed an earnest money check to Bruner in the sum of $1,000. But Bruner testified that he did not receive the check. The record contains no documents showing that Bruner actually cashed or deposited the earnest money check. The judgment required Bruner to convey the property to Keatley in exchange for $295,000, a figure which is inconsistent with the finding that Keatley paid the earnest money to Bruner. If Keatley paid the $1,000 in earnest money, the total amount due to close should have been $294,000. Bruner contends that on this record, the finding that Keatley paid him $1,000 in earnest money is erroneous, with the result that the option contract is unsupported by consideration and must be set aside as void.

Factual findings are reviewed to determine if they are supported by substantial evidence. McDonald v. Parker, 70 Wn.2d 987, 988, 425 P.2d 910 (1967). Substantial evidence is such evidence that would persuade a fair minded person the facts were actually proven. Keever & Assocs., Inc. v. Randall, 129 Wn. App. 733, 737, 119 P.3d 926 (2005), review denied, 157 Wn.2d 1009 (2006).

4

Substantial evidence supports the challenged finding. The trial court was entitled to, and did, find Keatley's testimony more credible than Bruner's. The oral ruling noted that the court had "great trouble believing the defendant and his testimony." Keatley testified that she handed Bruner the check. It is irrelevant that Bruner did not cash the check. The $1,000 discrepancy is most reasonably seen as a scrivener's error by Keatley's attorney in drafting the findings. We conclude it does not undermine finding of fact F.

## CLOSING WITHIN A REASONABLE TIME

Bruner also assigns error to finding of fact M, that the contract implicitly required Keatley to demand closing within a reasonable time:

> Given the lack of a closing date, the Court will infer a "reasonable amount of time" for closing and, under the circumstances of this case, Keatley's demand for closing in October 2010 was within a reasonable amount of time.

Bruner claims that by inferring the parties intended to impose a "reasonable time" limit on closing, the court inserted a term not agreed upon by the parties. He argues this finding is inconsistent with the finding that the parties intentionally left the closing date open to allow Keatley time to obtain financing.

A court is not at liberty to write a contract for the parties they did not write themselves. See Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co., 139 Wn.2d 824, 832-33, 991 P.2d 1126, 1 P.3d 578 (2000). But the lack of a definite closing date does not render an agreement fatally defective. An open ended option is enforceable so long as closing occurs within a reasonable time after acceptance. Foelkner v. Perkins, 197 Wash. 462, 466-67, 85 P.2d 1095 (1938); Duprey v. Donahoe, 52 Wn.2d 129, 135, 323 P.2d 903 (1958). What is a reasonable time

is to be determined by the circumstances of a case and the purpose of the parties that entered into an agreement. Thompson v. Thompson, 1 Wn. App. 196, 201, 460 P.2d 679 (1969); see also Lawson v. Redmoor Corp., 37 Wn. App. 351, 356, 679 P.2d 972 (1984). The trial court correctly considered the longstanding intimate familial relationship that existed between Keatley and Bruner before they entered into the contract as well as the purpose of their agreement. We find no error in finding of fact M.

## MATERIAL TERMS

Bruner contends that the contract is unenforceable because material terms are missing.

Preliminary agreements "must be definite enough on material terms to allow enforcement without the court supplying those terms." Setterlund v. Firestone, 104 Wn.2d 24, 25, 700 P.2d 745 (1985). Specific performance cannot be decreed unless the terms are complete and free from doubt, making the precise act which is to be done clearly ascertainable. Hubbell v. Ward, 40 Wn.2d 779, 785, 246 P.2d 468 (1952). In Hubbell, the purchaser agreed to pay $9,000 down and sign a contract for the balance. Hubbell, 40 Wn.2d at 780. The seller refused to go forward with the transaction. The purchaser sued and obtained a decree of specific performance directing the seller to enter into a real estate contract according to the terms of the earnest money agreement. The decree was reversed on appeal because the agreement failed to reflect any understanding of what the terms of the future contract for the balance would be; it

only "contemplated that a real estate purchase contract which would contain new and additional terms might be executed in the future." Hubbell, 40 Wn.2d at 782.

The Hubbell court identified 13 material terms that must be specified in an option contract to enter into a future real estate contract. Hubbell, 40 Wn.2d at 782-83; Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Bruner sets forth 7 of the Hubbell terms that are missing from his agreement with Keatley, and he argues that their absence makes the agreement unenforceable: (1) time and manner for transferring title; (2) procedure for declaring forfeiture of earnest money; (3) allocation of risk with respect to damage or destruction; (4) insurance provisions; (5) responsibility for taxes, repairs, and water and utilities; (6) restrictions, if any, on capital improvements, liens, removal or replacement of personal property, and (7) a closing date.

In applying Hubbell, the problem "is not one of determining how many more terms are included in one agreement or another, but whether a particular agreement includes sufficient material terms." Setterlund, 104 Wn.2d at 26. "We do not enumerate those items which constitute material terms which must be agreed upon in the earnest money agreement. The general principle must be applied factually in each case." Setterlund, 104 Wn.2d at 26-27. Bruner does not attempt to demonstrate that the seven Hubbell terms he lists were necessary to make this particular contract enforceable.

The contract is not a preliminary agreement to enter into a future contract, as was true in Hubbell, Setterlund, and another case cited by Bruner, Sea-Van Invs. Assocs. v. Hamilton, 125 Wn.2d 120, 128-29, 881 P.2d 1035 (1994).

Keatley and Bruner did not contemplate entering into a future real estate contract with new and additional terms. Their contract identifies the seller, the buyer, the property to be sold, and the price; and it states that the title is to be free of encumbrances or defects upon transfer. The omission of a closing date is not a fatal defect, because as discussed above, it was proper under the circumstances for the trial court to enforce the agreement upon finding that Keatley demanded closing within a reasonable amount of time. We conclude the contract specified sufficient material terms to make it enforceable.

## ISSUES ABANDONED OR WAIVED

Bruner's opening brief argued that the legal description in the contract is insufficient to satisfy the real estate statute of frauds, RCW 64.04.010. On March 14, 2016, Bruner submitted a document to this court in which he withdrew this argument. We therefore do not consider the issue.

Bruner contends that the contract constitutes an unreasonable restraint on alienation and violates the rule against perpetuities because it allowed Keatley to exercise her option anytime she wanted and potentially would have forever kept Bruner from encumbering it or selling it to anyone else. These issues will not be considered on appeal because they were not raised in the trial court. "A lawsuit cannot be tried on one theory and appealed on others." Teratron Gen. v. Institutional Inv'rs Trust, 18 Wn. App. 481, 489, 569 P.2d 1198 (1977), quoting Puget Sound Marina, Inc. v. Jorgensen, 3 Wn. App. 476, 480-81, 475 P.2d 919 (1970).

Affirmed.

WE CONCUR:

Becker, J.

Trickey, ACJ